KVK-Tech, Inc. v. Navigators Specialty Okay, Mr. Helmsing, will you come speak to us please? Good morning, Your Honors. May it please the Court. Fred Helmsing here on behalf of the unusual or atypical facts in terms of the interaction of two insurance policies, a primary policy and an excess policy. What we're here about today is KVK's claims under its excess policy, which was issued by Navigators. And to cut right to the heart of it, Your Honor, based on how the primary policy, which we think is permissible under the language of the opioid claims that had been asserted against KVK-Tech as a batch occurrence all under the earlier primary policy period, a lot of words that start with P in this case, that the interpretation or the limitation rather in the Navigators policy effectively renders it impossible for KVK-Tech to comply with the provisions of that policy in terms of providing. But they complied with respect to other excess insurers. It's hard for me to understand how they could not have brought this to the attention of Navigators Specialty within six months of the expiration of the policy. Well, yes, Your Honor, I guess the... I mean, KVK-Tech admits it waited over seven months until January 2020 to give notice to Navigators. Yes, sir, that is correct. But that was the notice that was provided to those other insurers was outside of even the second, the later Navigators policies, right? So Navigators has a policy that runs from 16 to 17 and then 17 to 18. You're saying you couldn't have... Yeah, counsel, you're saying you couldn't have met within the policy deadline, but Navigators also has a requirement which your sophisticated attorneys and parties signed on to that they would notify as soon as practical. Right. It doesn't matter what it would have been then without if it wasn't as soon as practical. Well, yes, Judge Farns, and I think that... In our opinion, that would create a question of fact as to why notice after the policy period. The Navigators policy is clear that notice has to be provided within the policy period. And what we don't have here are any facts on the record or any factual basis. So you're saying your position is if you can't notify within the policy period, you don't have to notify as soon as practical after the policy period. Well, Judge, I'm not saying that our position is that provision still doesn't have application here. What I'm saying is that the circumstances surrounding what is as soon as practical is a fact question that the district court should not have considered on the judgment of the plea. Well, that goes back to Chief Judge Prior's initial question. Why didn't you notify them when you notified all the other carriers? And, Judge, that is an excellent question and one that... Give me an excellent answer to it. Don't evade it. Just tell me. If I could give you that excellent answer, I might not be standing here today. Let me answer it from reading your brief and listening to your partial answer, quote-unquote answer here. It was just an oversight. We screwed up. Help us. That's your position, correct? Yes, Sir, Judge. I am struggling for the right way to describe the reason why that notice was not provided. But I don't know respectfully that that would make any difference and we still wouldn't be here today because I think that it's still outside of the navigator's policy period. We might be here, we might still be here today, but you would have a lot better argument in case than you've got. It's not very appealing analytically to say, look, we couldn't do it within the policy period, so we just didn't do it as soon as practicable either. So instead of violating just one provision, we violated two. Well, Judge, I also think that the delay of seven months is not necessarily, as a matter of Pennsylvania law, not as soon as reasonably practicable given the circumstances, the totality of the circumstances. And I think we cited or there's a dearth of case law really on that precise point. Let's talk about this. Okay. The claim is first made when the insured or insurer first receives notice of the claim, right? Yes. The Hughes lawsuit was first made during the 2017-18 policy period. Yes, sir. And VK Tech notified Ironshore of the Hughes lawsuit on August 24, 2017, right? That's right. Why couldn't you notify navigators? Judge, I, you know, why? But that's what you're saying is a question of fact, and you don't even have what would be debated because you don't have an excuse is really what it is. Your Honor, I think that an analysis of the navigator's policy that was in place at that point in time, which is the later policy, there's no way for that to go back and relate to the earlier policy, which is what Well, it's first made during the 2017-18 policy period. Yes, but the primary policy that afforded coverage to KBK Tech for these opioid-related claims is treated as a batch occurrence under the prior policy. So caught in a situation Whether they treat it as a batch occurrence, though, doesn't have any bearing on when the claim is first made, which is the trigger for notice. Yes, sir. And it's first made during the 2017-18 policy period. Yes, sir. But I think it's important to consider here the primary policy, the Ironshore policy, has a window, an additional 30-day reporting window that would allow Ironshore to treat that policy or treat that notice of that claim, rather, in its earlier policy period. Isn't it really a 60-day, unless I misunderstood it? I thought there's a provision that says with the additional 30 days, if there's a lawsuit within those additional 30 days, then you have another 30 days. So the extension is actually 60 days, right? It's just 30 days. I think there's an additional 30-day reporting window under the Ironshore policy. So these are claims-made insurance policies, which means It's as soon as possible, but not more than 30 days after the policy's expiration date. That's the language from the underlying primary policy. That language is, and this is one of the errors that we This is a follow-the-form Follow-the-form excess policy. One of the errors that we point out that the district court made is that the district judge determined that the excess policy contained that additional 30-day reporting window, and it does not. The policy language in the excess policy is clear that notice has to be provided within the policy period. So the Yeah, it says, the navigator's provision says, if the controlling underlying insurance so requires, the claim must be reported to us during the policy period. But the problem is, the if condition doesn't apply here, because it allows up to 30 days after the policy period. Well, Judge, I think that provision is trumped by the provision in the insuring agreement that I believe it's paragraph 2 that says that they incorporate, the excess policy incorporates the language from the primary policy unless the excess policy has a more restrictive provision. It doesn't, though. That's the problem. It's not more restrictive. Because if you read the plain language of it, it says, if the controlling underlying insurance so requires. And it doesn't. You see my point? I see your point. And I think, though, in the under Pennsylvania law, under general insurance interpretation law, the tie essentially goes to the insurer. The court should endeavor to construe the policy in a way to try to find coverage. We would respectfully submit that the failure of the navigator's policy to expressly include that additional 30-day. It does include it. It expressly includes it. If the controlling underlying insurance so requires. But in this case, it doesn't. So you get the benefit of the 30 days after. I'm just reading the plain text of it, of both policies. Yes, sir. I understand the court's interpretation of that. But I think that the more restrictive lack of specific reference to the 30-day period would trump or would require under insuring section 1A. You know, and then the problem is you run into a separate and independent problem of whether KVK tech provided notice as soon as practicable. And do you agree that's the standard? I mean, there's no other deadline that you're working with. It is that soon as practicable is the deadline we're working with, right? Yes, Your Honor. I think that the way I appreciate the, excuse me for hitting the microphone, the policy. I mean, you all waited over two years. Yes, to be construed is that say the policy period is a calendar year. And if the notice of the claim comes in on January 2nd and you wait until December 31st within the policy period to provide notice, you might have, the insurer might raise that you didn't do, the insurer did not provide notice as soon as practicable within the policy period. I would submit, Your Honor, I don't have any authority to cite to the court to this, but that that limitation is contained to within the notice period of the policy and wouldn't apply outside of that. Okay. Judge Cornish, do you have any questions? No. Okay. We've allowed you to go over. You were answering questions from us. Ms. Sorensen? Yes. Good morning. My name is Colleen Sorensen, and I represent the appellate navigators specialty insurance company. Counsel, your position reminds me of something our former Chief Judge Edmondson said. Since Chief Judge Prior has referred to him, I will too. He once said of a counsel in your position as he or she took the podium, you have an opportunity to snatch defeat from the jaws of victory. Would you like to take that opportunity? And the answer inevitably is yes, so go ahead. She actually said no, Judge. I did want to, I think the bottom line is that two and a half years doesn't satisfy any of the possible interpretations of a policy's notice. Requirement, so it doesn't matter how you interpret the policy. People simply waited too long, whether it was during the policy period, whether it was 30 days thereafter, whether it was soon as practical when they knew or reasonably should have known that there was a potential that navigator's policy would be implicated. It was just too late. It came way too late. But I did want to take a moment to address the extended reporting period question very briefly, because it seems like the district court had a misunderstanding about that, and I want to make sure that it's clear how that operates. I mean, this is simple, right? Let me go through some facts. The record establishes and KVK Tech concedes it had notice of the huge lawsuit on August 24th, 2017. It's also undisputed that on June 25th, 2019, KVK Tech notified some of its excess insurers, but not navigators, that it had been named a defendant in over 600 opioid lawsuits, right? That's correct. And there's no dispute KVK Tech provided notice to navigators for the first time on January 27th, 2020, over two years after it first learned about the huge lawsuit, and over seven months after it notified the other excess insurers about the huge lawsuit. That's correct. Okay. That's all right. That's exactly why the court should move in favor of navigators. I just wanted to point out that the claim was not made during the 2016-2017 policy period, so we only need to focus on the 2017-2018 policy. And that's because there was no extended reporting period for the 2016-2017 policy. If you look at Section 6. The issue is when it's first made, right? And that occurs during the 2017-18 policy period. Right. You know, there is a situation in which claims made after the policy expires can be covered, but that's only if there's an applicable extended reporting period. And here the parties agree that there isn't one. If you look at pages 18 and 19 of KVK Tech's brief, they can see that. Because the policy was renewed, there was no extended reporting period. And I just wanted to really point out there is no unfairness in enforcing the policy's plain language because the navigators were able to deny coverage simply because Ironshore batched the claims in the 2016-2017 policy period. Judge Carnes, do you have any questions? No. So I guess, unless the court has questions, I will sit down. Thank you, Ms. Sorensen. We appreciate that. Mr. Helmsi? Yes. I'm sure you all wanted to hear more from me. I think I can appreciate where the court is leaning in this case. But I would like nonetheless to point out, just for the record, and I understand the court's skepticism of this argument, but I think that KVK Tech is placed in a very difficult situation here with the treatment by its primary insurer of the claims in the prior policy. I don't understand how it's in a difficult situation when it notified its other excess insurers and didn't notify the navigators. I don't get it. Judge Carnes, with respect, I don't think that would have solved the problem because that is after the policy period. That's not by any mechanism that the legislature But it didn't even do that. And you run into the soonest practicable problem. But I think that's manageable from our perspective as something upon which further information discovery could be developed. But what would additional discovery uncover? Well, Judge, I think that... And first, so that's the only issue in dispute as well in terms of a factual issue you're claiming is whether or not there were special circumstances to justify why all the other excess carriers, excess insurers were notified except for navigators? Yes, Your Honor. I think that looking at the totality of the circumstances, considering all of the information, what was the delay of that seven-month period unreasonable under the circumstances didn't violate that policy. What do you think discovery would bring to our attention that we change it? Judge, I think that the one issue would be why navigators would consider that to be timely notice when it is outside of their policy period. I think that what their policies and procedures would be for that, what difference it would make to them of a seven months later when it's admittedly this far after the original... Because they have a provision that says it has to be done as soon as practicable. And the undisputed facts show that it wasn't. Well, Judge, I guess that goes to the heart of our dispute. It's the benefit. They just want to get the benefit of the bargain that they had in issuing the policy. That's all. And Judge, we respectfully would say that there is a dispute about whether under the circumstances that was done as soon as practicable. But I understand the court's... Skepticism. Skepticism of that position. But I do think that there's no question that the second navigator's policy does not refer to any primary policy for the 2017-2018 period to which we could have obtained coverage. Because of the way that the primary policy, Ironshore issued here, applies to an earlier policy period, we're left... Even if we had provided notice within the 2017-18 time period, what would the excess policy have applied to? It is clear on its... First made. That Hughes lawsuit was first made during the 2017-18 policy period. Yes. And you could have notified navigators immediately about that. But how do you know, Judge Pryor, what would it have applied to? Because the coverage, it is clear on its face that it applies to a later issued Ironshore policy that is defined as the controlling underlying insurance. There would be no... It would have applied to the soonest practicable requirement. See, I view this as sort of a big CF or a little CF to the statute of frauds and other formalities. You've got that requirement. And when somebody invokes the statute of frauds, it's not a valid defense to that defense to say, well, the parties don't really dispute it. We've taken the depositions. That doesn't matter. There's formality requirements. And one is as soon as practicable because in some cases it may matter to the insurance company. There may be something the insurance company needs to do or it may be prejudiced by not being notified as soon as practicable. But it bargains for the right not to have to explain how it was served by that and litigate it. You either notify it as soon as practicable or you don't. And that's where it stops. Just like the statute of frauds stops with was it in writing or not. Question mark. I understand your point, Judge Corns. And I've been honored to respond to that. Okay. Thank you, Mr. Helmsing. We're going to move to our third and final case.